IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| SHARON K. REEVES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 6:11-03538-DGK-SSA |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## AMENDED ORDER AFFIRMING COMMISSIONER'S DECISION

Plaintiff Sharon Reeves seeks judicial review of the Commissioner of Social Security's denial of her application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et. seq.*, and application for supplemental security income (SSI) based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381 *et. seq*. Plaintiff contends she is disabled due to back and neck problems, carpal tunnel syndrome, temporomandibular joint disorder, depression, anxiety, and post-traumatic stress disorder ("PTSD"). The Administrative Law Judge ("ALJ") denied Plaintiff's applications, finding that while she suffered from numerous severe impairments, she retained the residual functional capacity ("RFC") to perform a restricted range of light work. Relying on testimony from a vocational expert ("VE"), the ALJ concluded Plaintiff could perform work existing in significant numbers in the national economy, including an electronics worker, small products assembler, and packager.

After carefully reviewing the record, the Court finds the ALJ's decision is supported by substantial evidence on the record as a whole, and the Commissioner's decision is AFFIRMED.

## Factual and Procedural Background

A summary of the medical record is presented in the parties' briefs and is repeated here only to the extent necessary.

Plaintiff filed her applications on October 21, 2009 alleging a disability onset date of November 3, 2004. The Commissioner initially denied her applications on February 10, 2010. A video hearing was held before the ALJ January 19, 2011. After Plaintiff testified, the ALJ continued the hearing and requested Plaintiff attend a psychological consultative examination. The ALJ held a supplemental video hearing on June 14, 2011.

The ALJ denied Plaintiff's applications on August 8, 2011. The Appeals Council denied Plaintiff's request for review on November 18, 2011, leaving the ALJ's decision as the Commissioner's final decision. Plaintiff has exhausted all of her administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

## Standard of Review

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's conclusion. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The court may not reverse the Commissioner's decision as long as substantial evidence in the records supports this decision, even if substantial evidence in the record supports a different result, or if the court might have decided the case differently were it the initial finder of fact. *Id.*

**Analysis**

Generally, a federal court's review of the Commissioner's decision to deny an application for benefits is restricted to determining whether the Commissioner's decision is consistent with the Act, the regulations, and applicable case law and whether the findings of fact are supported by substantial evidence on the record as a whole. In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process.[1]

Plaintiff argues the ALJ erred by: (1) giving no weight to the report of her counselor, Julie Mitchell, LPC; (2) failing to develop the record by ordering a secondary physical consultative evaluation; (3) asking the VE an improper hypothetical question; and (4) failing to find that her PTSD was a severe impairment separate from her anxiety. The Court finds no merit to these arguments.

**A.  The ALJ did not err in weighing Ms. Mitchell's opinion.**

Plaintiff first argues that the ALJ erred in giving the opinion of her counselor, Julie Mitchell, no weight. The ALJ stated he gave her opinion no weight because under the regulations a counselor is not considered an "acceptable medical source," and her opinion was not well-supported by her treatment notes. R. at 20-21. Ample evidence in the record supports this decision.

---

[1] The five-step process is as follows: First, the Commissioner determines if the applicant is currently engaged in substantial gainful activity. If so, he is not disabled; if not, the inquiry continues. At step two the Commissioner determines if the applicant has a "severe medically determinable physical or mental impairment" or a combination of impairments. If so, and they meet the durational requirement of having lasted or being expected to last for a continuous 12-month period, the inquiry continues; if not, the applicant is considered not disabled. At step three the Commissioner considers whether the impairment is one of specific listing of impairments in Appendix 1 of 20 C.F.R. § 404.1520. If so, the applicant is considered disabled; if not, the inquiry continues. At step four the Commissioner considers if the applicant's residual functional capacity ("RFC") allows the applicant to perform past relevant work. If so, the applicant is not disabled; if not, the inquiry continues. At step five the Commissioner considers whether, in light of the applicant's age, education and work experience, the applicant can perform any other kind of work. 20 C.F.R. § 404.1520(a)(4)(i)-(v) (2009); *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). Through step four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King*, 564 F.3d at 979 n.2.

Because Ms. Mitchell is a counselor, the regulations treat her opinion as an "other source" of evidence and not an "acceptable medical source." 20 C.F.R. § 404.1513(a), (d). Thus, under Social Security Ruling 06-03p, her opinion is not entitled to controlling weight and is simply treated as other relevant evidence of record. Here, the ALJ observed that Ms. Mitchell's treatment notes did not support her opinion that Plaintiff would be moderately to markedly limited in nearly all work-related functioning, including markedly limited in the ability to understand, remember, and carry out simple instructions and respond appropriately to criticism from supervisors. R. at 21, 703-04.

Ms. Mitchell evaluated Plaintiff only once, on March 7, 2011, yet assessed Plaintiff with two different Global Assessment of Functioning ("GAF") scores, 52 and 45. R. 694 696-97. This is problematic because the scores denote differing levels of impairment. A GAF score in the range of 40 to 50 indicates a claimant suffers from severe symptoms or a "serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)," while a score in the range of 50 to 60 indicates a claimant has only "moderate symptoms or moderate difficulty in social or occupational functioning." *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010). While GAF scores change over time, nothing in Ms. Mitchell's notes explain why she assigned two different GAF scores during a single evaluation.

Additionally, Ms. Mitchell's evaluation contained very few objective findings supporting her opinion. R. at 694, 696-97, 703-04. Her opinion was also inconsistent with other substantial evidence of record, including the opinions of the examining psychologist and the testifying medical expert. It was also inconsistent with evidence that Plaintiff was healthy enough to work part-time as a hairdresser and waitress during her alleged period of disability. R. at 43-48, 682-90, 703-04. Furthermore, contrary to Ms. Mitchell's opinion that Plaintiff had moderate-to-

4
Case 6:11-cv-03538-DGK   Document 22   Filed 03/27/13   Page 4 of 9

marked social limitations, Plaintiff testified that she had no problems getting along with others. R. at 72, 704. Accordingly, the ALJ did not err in giving Ms. Mitchell's opinion little weight.

**B.      The ALJ did not need to order a second physical consultative examination.**

Plaintiff also argues that the ALJ erred by not ordering a second physical consultative examination. More specifically, Plaintiff contends the ALJ erred because the consultative medical examiner, Dr. David Engelking, M.D., did not review all of Plaintiff's medical records; the evaluation occurred 19 months before the ALJ issued his decision and did not support the ALJ's conclusions; and Plaintiff's condition deteriorated after the evaluation occurred.

As a threshold matter, it is the claimant's responsibility to provide medical evidence to show that she is disabled. 20 C.F.R. §§ 404.1512, 416.912. The ALJ, however, has a duty to develop the record fully and fairly, *Freeman v. Apfel*, 208 F.3d 687, 692 (8th Cir. 2000) (citation omitted), but failure to develop the record merits reversal only when the claimant can show she was prejudiced. *Onstad v Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993).

Dr. Engelking conducted his consultative physical examination on January 22, 2010, several months after Plaintiff alleges she became disabled. R. at 219, 226, 600-05. During his examination, he found no tenderness, deformities, or spasms in Plaintiff's shoulders, elbows, wrists, neck, or back. R. at 602. He also reported Plaintiff was able to dress and undress, climb onto the examining table, tandem walk, walk on her heels and toes, squat and arise, grasp and shake hands, and button and unbutton clothes. R. at 602-03.

Plaintiff argues Dr. Engelking's opinion is unreliable because he did not review all of Plaintiff's medical records, but there is no evidence supporting this argument. With the exception of Plaintiff's fibromyalgia diagnosis, which was made after Dr. Engelking's evaluation, there is no evidence here that Dr. Engelking failed to review any existing records.

Plaintiff's argument that Dr. Engelking's evaluation failed to support the ALJ's conclusions is similarly conclusory and unsupported. It is also irrelevant. The ALJ made the decision here, not Dr. Engelking, and the ALJ is not required to rely on or embrace a particular doctor's opinion. *See Martise v. Astrue*, 641 F.3d 909, 927 (8th Cir. 2011) ("[T]he ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians" in determining a plaintiff's RFC). "[A] lack of medical evidence to support a doctor's opinion does not equate to underdevelopment of the record as to a claimant's disability." *Id.* As for the fibromyalgia records, the Court notes that the ALJ, not Dr. Engelking, made the legal determination that Plaintiff was not disabled under the Act. In making this determination, the ALJ considered *all* of Plaintiff's medical records, including those created after Dr. Engelking's evaluation. R. at 19. Thus, Plaintiff has not demonstrated that a second physical consultative examination was needed, much less that she was prejudiced by the ALJ's failure to order one.

**C.     The ALJ asked the VE a proper hypothetical question.**

Plaintiff argues that the ALJ erred by asking the VE an improper hypothetical question. Plaintiff complains that the ALJ's question to the VE did not precisely describe her condition. Plaintiff notes this issue is complicated by the fact that three portions of the hearing transcript are inaudible. Plaintiff contends this case should be remanded so a proper hypothetical question can be posed to the VE.

The relevant portion of the transcript reads as follows:

ALJ:   All right. So based on her age, education, and past work experience, if I find that she has to alternate between sitting and standing at will, lift up to 20 pounds at a time, but frequently carry [inaudible] 10 pounds. No heights or climbing. No dangerous or moving equipment. Then refer to the mental side.

| VE: | Yes, sir. |
|---|---|
| ALJ: | [Inaudible] reservations, obviously, that she would have an unskilled, she has none for the following simple, but she has marked for complex. So, I'll put her down to the unskilled level. |
| VE: | Yes, sir. |
| ALJ: | [Inaudible] Mild public, none for supervisors, mild co-workers, so on. There. So, if you could give me three, well, could she do any of her past relevant work -- |
| VE: | No. |
| ALJ: | -- let me know. |
| VE: | Three examples of work compatible with that hypothetical are [electronics worker, small products assembler, and packager. These jobs exist in significant numbers in the national economy.] |

R. at 50-51. During the hearing, however, neither Plaintiff, Plaintiff's attorney, or the VE indicated they were unable to hear or understand the hypothetical question. R. at 50-51.

In his opinion, the ALJ found Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), provided she could sit or stand at will, would not be exposed to heights or dangerous moving equipment, and was not required to climb.[2] R. at 16. Plaintiff could understand, remember, and carry out simple instructions and make judgments on simple work-related decisions. R. at 16. However, she was markedly limited in the ability to understand, remember, and carry out complex instructions and make judgments on complex work-related decisions. R. at 16-17. Plaintiff was mildly limited in her ability to interact appropriately with the general public and co-workers but had no limitation in her ability to

---

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds; a good deal of walking or standing; or sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. §§ 404.1567(b), 416.967(b).

interact appropriately with supervisors. R. at 17. She was also mildly limited in her ability to respond appropriately to usual work situations and changes in routine work setting. R. at 17.

When the RFC finding is read alongside the hearing transcript, it is clear that the hypothetical question that the ALJ posed to the VE posits that Plaintiff is restricted to light work and simple jobs, and that she has mild limitations in her ability to interact appropriately with co-workers and supervisors. This understanding is consistent with the ALJ's decision to give great weight to the opinions of Dr. Jonathan Rosenboom, Psy.D. and Dr. Ashok Khushalani, M.D., a board certified psychiatrist, both of whom prescribed similar limitations. R. at 47-48, 688-89. Accordingly, there is no merit to Plaintiff's claim that the hypothetical question did not precisely describe her condition, nor is there any need to order remand to clarify the transcript.

The Court holds the ALJ's hypothetical question incorporated each of Plaintiff's credible physical and mental impairments and excluded those impairments that were not credible or unsupported by the evidence presented. Consequently, the VE's answer constitutes substantial evidence supporting the Commissioner's decision. *See Gragg v. Astrue*, 615 F.3d 932, 941 (8th Cir. 2010).

**D.    The ALJ did not err in finding that Plaintiff's PTSD was not a severe impairment.**

Finally, Plaintiff argues that the ALJ erred in not recognizing her PTSD as a severe impairment separate from her anxiety.

A severe impairment is an impairment that significantly limits a claimant's physical or mental ability to perform basic work activities. 20 C.F.R. § 404.1520(c). An impairment is not severe when it has no more than a minimal effect on an individual's ability to work. 20 C.F.R. § 404.1521; Social Security Ruling (SSR) 96-3p. The claimant bears the burden of establishing her impairment is severe. *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). Although severity is not an onerous requirement to meet, it is also not a toothless standard. *Id.* at 70.

Here, the ALJ did not err in describing Plaintiff's PTSD as a severe impairment of "anxiety in the form of post-traumatic stress disorder." R. at 14. Treating Plaintiff's anxiety and PTSD as a single impairment is consistent with the opinions of Drs. Rosenboom and Khushalani, both of whom assessed Plaintiff with PTSD and not with a separate anxiety disorder. R. at 44, 656. Plaintiff's mental symptoms included depression and anxiety, but not other symptoms of PTSD such as hypervigilance or difficulty getting along with others. R. at 72, 683; Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision (DSM-IV-TR) 309.81 (4th ed. 1994). Given the record, the Court cannot hold that the Plaintiff has born her burden of establishing that the ALJ should have analyzed her PTSD as a severe impairment distinct from her anxiety. At most, the ALJ's failure to analyze her PTSD separately is a deficiency in opinion writing technique which had no bearing on the result and does not warrant reversal or remand. *Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008).

## Conclusion

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date: March 27, 2013                    /s/ Greg Kays
                                        GREG KAYS, JUDGE
                                        UNITED STATES DISTRICT COURT